IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SARA COTHER, KENNETH COTHER AND JACKIE COTHER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF TRISTEN COTHER AND THE WRECKERMAN, LLC,<br><br>*Plaintiffs*<br><br>vs.<br><br>AmGUARD INSURANCE COMPANY AND NORTH AMERICAN RISK SERVICES, INC.,<br><br>*Defendants* | § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 1:22-cv-765-RP |

## AmGUARD INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

AmGUARD Insurance Company ("AmGUARD" or "Defendant") files this motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and would show the Court as follows:

### I. EXECUTIVE SUMMARY WITH BACKGROUND FACTS

A.    This is an underinsured motorist ("UIM") insurance case. Plaintiffs have: (1) requested a declaratory judgment with respect to the insurer's obligations under the policy of insurance, (2) claimed breach of contract, (3) and have claimed a violation of § 542 of the Texas Insurance Code. Doc. 1, Exhibit B, Plaintiffs' Original Petition.

B.    In its answer, AmGUARD stated that Texas law applies to this case,[1] denied Plaintiffs' claims that AmGUARD breached the contract and that it violated any provision of the

---

[1]    Substantive Texas law applies to this diversity case dealing with insurance. *See, e.g., Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955) (no controlling

Texas Insurance Code, and asserted the affirmative defense that Plaintiffs failed to meet the conditions precedent of the underinsured motorist provision ("UIM") of the policy of insurance issued by AmGUARD. Doc. 2.

      C.     AmGUARD issued a policy which provides $100,000 in UIM coverage. Exhibit A.[2] The key language in the UIM provision as interpreted by Texas courts is "legally entitled to recover from the owner of an 'uninsured motor vehicle.'" The Texas Supreme Court has held that an underinsured motorist insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and the underinsured status of the other motorist; however, a judgment establishing these prerequisites to coverage may be obtained in a direct action against the insurance carrier. *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 265 (Tex. 2021).

      D.     The UIM provision defines an insured as follows:

> A partnership, limited liability company, corporation of any other form of organization, then the following are "insureds": …

>> b.     Any person "occupying" a "covered auto".

>> c.     Any person or organization for damages that person or organization is entitled to recover because of "bodily injury" sustained by a person described in b. above.

Exhibit A, Texas UIM Endorsement, AIC 000043.

---

admiralty law applies; therefore, Texas substantive state law applies with respect to insurance coverage).

[2]     In the Joint Rule 26 Report (Doc. 8), AmGUARD stipulated that it issued a policy of insurance which provided underinsured motorist coverage to The Wreckerman, LLC under Policy No. K2GP110136, and it stipulated that the underinsured/uninsured motorist coverage is limited to $100,000. In response to requests for admission, Plaintiffs admitted that the UIM limits are $100,000. Exhibits B, C and D response to request for admission number 2.

Tristen Cother was an insured under the Policy as well as those entitled to recover because of a "bodily injury" which includes death as defined by the Policy.[3]

E.      On August 25, 2020 (prior to the filing of this case), Plaintiffs filed a lawsuit in the 111th District Court of Webb County, Texas, under Case No. 2020CVA001489D2, and styled *Sara Cother; Kenneth Cother; Jackie Cother; The Estate of Tristen Cother, Deceased v. Jose Luis Juarez; HP Carriers, Inc.; and RCL Express, LLC* ("the Underlying Lawsuit"), wherein Plaintiffs alleged that the defendants, Jose Luis Juarez ("Juarez"), his employer, HP Carriers, Inc. ("HP") and RCL Express, LLC ("RCL") were responsible for the death of Tristen Cother for an accident that occurred on August 20, 2020. Exhibit E.[4]

F.       On November 12, 2020, Plaintiffs demanded the full UIM limits. Exhibit F. On December 21, 2020, the insurer responded that the Plaintiffs had not provided any evidence that they had made a claim on HP and Juarez's insurer, Hudson Insurance ("Hudson"), and that Hudson had paid policy limits of $1,000,000 to Plaintiffs or otherwise exhausted the policy by the payment

---

[3]      The Policy defines "bodily injury" as follows:

>      "Bodily injury" means bodily injury, sickness or disease sustained
>      by a person, including death resulting from any of these.

Exhibit A at AIC 000063.

[4]      Although a declaratory judgment action is the appropriate remedy for determining the underlying tort issues that control the validity of an insured's UIM claim against his insurer, Plaintiffs filed the Underlying Lawsuit to determine liability which was pending when Plaintiffs filed this declaratory judgment action. The Texas Supreme Court has noted that a breach-of-contract claim would not be ripe unless an insurer refuses to pay UIM benefits once the underlying conditions of liability and damages have been established. *See Irwin*, 627 S.W.3d at 267. It would be a waste of valuable judicial resources to try the liability portion of the claim in this case since this has been resolved in the Underlying Lawsuit, AmGUARD agrees to be bound by those findings and settlements, and AmGUARD has tendered its $100,000 UIM limits to Plaintiffs.

of other claims. The letter also requested that if this has been done to please provide AmGUARD with the information. Exhibit G.

G.      No information with respect to Juarez and HP's insurers tender of available limits was received by AmGUARD until May 1, 2023, when Plaintiffs' counsel informed counsel for AmGUARD that on April 21, 2023, Juarez, HP Carriers, Inc. and their insurer, Hudson, settled for the policy limits in the Underlying Lawsuit. Exhibits H & I (settlement agreement). The undersigned counsel and counsel for Plaintiffs, Mr. Toscano, had a conversation wherein Mr. Toscano informed counsel for AmGUARD that a motion for summary judgment in favor of RCL Express, LLC was granted.[5] In light of the fact that Juarez, HP and their insurer settled for the policy limits and liability was determined as to RCL Express, LLC, on May 5, 2023, AmGUARD tendered the $100,000 in UIM benefits[6] to Plaintiffs, and requested payment instructions and

---

[5]      The docket sheet in the Underlying Lawsuit indicates that Plaintiffs added yet another defendant to the litigation, LC Trans, LLC, which was granted summary judgment on April 19, 2023. Exhibit K.

[6]      Regarding the limits of UIM benefits, the Policy provides as follows:

1.      Regardless of the number of "covered autos", "insureds", policies or bonds applicable, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured/Underinsured Motorists Coverage shown in the Schedule or Declarations [$100,000]. Subject to this maximum, our limit of liability will be the lesser of:

   a.      The difference between the amount of a covered "insured's" damages for "bodily injury" or "property damage" and the amount paid or payable to that covered "insured" for such damages, by or on behalf of persons or organizations who may be legally responsible; or

   b.      The applicable limit of liability for this coverage.

Plaintiffs' counsel's W-9. Exhibit G. Plaintiffs' counsel has not forwarded the requested information to make payment on the policy.

  H.   Since the conditions precedent to UIM coverage have been met,[7] and Plaintiffs in discovery in this case have provided evidence that the policy in the Underlying Lawsuit was not sufficient to cover the damages, AmGUARD tendered the UIM limits of $100,000. As a result, AmGUARD has discharged its obligations under the UIM provision of the policy.

  Since there is no obligation to pay the insured until liability was established in the Underlying Lawsuit, AmGUARD did not breach the contract of insurance since the conditions precedent to coverage had not been met when Plaintiffs originally tendered their claim on November 21, 2020. Furthermore, Plaintiffs' claims under Chapter 542 of the Texas Insurance Code, which deal with prompt payment of claims, also fails since AmGUARD tendered the $100,000 UIM policy limits on May 5, 2023, four (4) days after it received notice from Plaintiffs that a settlement had been reached in the Underlying Lawsuit, the other defendants had been dismissed by way of summary judgment, and the insurance proceeds from the Underlying Lawsuit were insufficient to cover the loss.

  Therefore, summary judgment is proper. The legal authority in support follows below.

---

Exhibit A, AIC 000043.

[7]  In the Rule 26 Joint Report (Doc. 8), AmGUARD noted that Plaintiffs had not met the requisites of establishing an underinsured motorist claim because there had been no determination that Juarez, HP, or any other party was the at fault driver, or that they were underinsured, or that their insurer has tendered its limits and that they were accepted by Plaintiffs and that the limits were insufficient. In response to requests for admission, Plaintiffs admitted that they had not obtained a judgment in the Underlying Lawsuit, nor had Plaintiffs settled with any of the defendants in the Underlying Lawsuit. Exhibits, B, C and D, response to request for admission numbers 3 and 5.

## II.  <u>THE EXHIBITS</u>

Exhibit A:     Policy No. K2GP110136

Exhibit B:     Plaintiff Jackie Cother's response to requests for admission

Exhibit C:     Plaintiff Kenneth Cother's response to requests for admission

Exhibit D:     Plaintiff Sara Cother's response to requests for admission

Exhibit E:     Original petition filed in the 111th District Court of Webb County, Texas, under Case No. 2020CVA001489D2, and styled *Sara Cother; Kenneth Cother; Jackie Cother; The Estate of Tristen Cother, Deceased v. Jose Luis Juarez; HP Carriers, Inc.; and RCL Express, LLC*

Exhibit F:     Letter dated November 12, 2020, from Plaintiffs to AmGUARD

Exhibit G:     Letter dated December 21, 2020, from counsel for AmGUARD to counsel for Plaintiffs

Exhibit H:     Email dated May 1, 2023, from counsel for Plaintiffs to counsel for AmGUARD

Exhibit I:     Settlement agreement in Underlying Lawsuit between Plaintiffs and Defendants Juarez and HP

Exhibit J:     Letter dated May 5, 2023, tender UIM policy limits and requesting payment instructions and W-9

Exhibit K:     Docket sheet in the Underlying Lawsuit

Exhibit L:     RCL USDOT Insurance Information

Exhibit M:     LC Trans USDOT Insurance Information

Exhibit N:     Affidavit of Chester J. Makowski

## III. <u>THE LEGAL STANDARD</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court "shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir.2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Washburn*, 504 F.3d at 508.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir.2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to

make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

As is discussed below, summary judgment in favor of AmGUARD may be properly granted because when the claim was originally tendered on November 21, 2023, AmGUARD's obligations had not been triggered, and once AmGUARD received notice that the Underlying Lawsuit had been resolved, AmGUARD tendered the UIM limits of $100,000.

## IV. AmGUARD DID NOT BREACH THE CONTRACT

**A.** "**LEGALLY ENTITLED TO RECOVER FROM THE OWNER OF AN 'UNINSURED MOTOR VEHICLE.'**"

**1.** THE TERMS OF THE UIM PROVISION IN THE POLICY

The coverage clause in the Policy provides as follows:

A. Coverage

1. We will pay damages which an "insured" is ***legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury"*** sustained by an "insured" or "property damage" caused by an "accident". The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."[8]

---

[8] The Policy defines "uninsured motor vehicle," in pertinent part, as follows:

"Uninsured motor vehicle" means a land motor vehicle or "trailer" of any type: …

d. Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident, but its limit of liability either:

Exhibit A, AIC 000042 (emphasis added).

### 2.    THE TEXAS INSURANCE CODE

Section 1952.106 of the Texas Insurance Code provides as follows:

> Underinsured motorist coverage must provide for payment to the insured of all amounts that the ***insured is legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury*** or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

TEX. INS. CODE §1952.106 (emphasis added).

### 3.    THE TEXAS SUPREME COURT'S INTERPRETATION OF THE PROVISION

A "UIM contract is unique because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party." *In re State Farm Mut. Auto. Ins. Co.*,  629 S.W.3d 866, 875 (Tex. 2021) (quoting *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006)).

The key language, as interpreted by Texas courts, is "legally entitled to recover from the owner of an 'uninsured motor vehicle.'"

The Texas Supreme Court holds that a UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and the underinsured status

_____

> (1)    Is not enough to pay the full amount the covered "insured" is legally entitled to recover as damages; or
>
> (2)    Has been reduced by payment of claims to an amount which is not enough to pay the full amount the covered "insured" is legally entitled to recover as damages.

Exhibit A, AIC 000045.

of the other motorist; however, a judgment establishing these prerequisites to coverage may be obtained in a direct action against the insurance carrier. *Irwin*, 627 S.W.3d at 265; *Brainard*, 216 S.W.3d at 815 ("We examined the insurer's obligation to pay damages which the insured is "legally entitled to recover" from the underinsured motorist and concluded that there is no contractual duty to pay benefits until the liability of the other motorist and the amount of damages suffered by the insured are determined.") (citing *Henson v. Southern Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652 (Tex. 2000)).

A UIM insurer cannot and does not breach its contractual obligation to pay until the tort liability of the tortfeasor is established. *Henson v. S. Farm Bureau Cas. Co*., 17 S.W.3d 652, 2000 Tex. LEXIS 39 (Tex. 2000). If a covered person seeking UIM benefits obtains a final judgment establishing liability and damages against a tortfeasor (in excess of the liability policy limits of the tortfeasor), then the UIM insurer becomes legally obligated to pay for the first time when the final judgment is rendered. *Id.*[9]

---

[9]     Regardless of when the insurer's statutory duty to attempt a good-faith settlement arises, the insured does not suffer legally cognizable damages owing to the insurer's breach of that duty unless (1) he was actually owed benefits under the policy, or (2) the refusal to settle causes him damages independent of his entitlement to policy benefits. *In re State Farm Mut. Auto. Ins. Co*.,  629 S.W.3d at 874, n.2. In the present case, the benefits were not owed until AmGUARD was notified of the resolution of the Underlying Lawsuit, and AmGUARD promptly tendered the $100,000 UIM limits once notified.

**B.   THE ANALYSIS IN THE PRESENT CASE**

Plaintiffs' breach of contract claim fails as a matter of law because AmGUARD's obligations under the Policy were not triggered when the claim was originally made on November 21, 2020.

As is noted above, a UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and the underinsured status of the other motorist.

Plaintiffs filed the Underlying Lawsuit to determine the liability of the parties to the accident on August 25, 2020, in the 111th District Court of Webb County, and as the docket sheet indicates, the Underlying Lawsuit was vigorously litigated. Exhibits E and K.

A little over two months after the Underlying Lawsuit was filed, on November 12, 2020, Plaintiffs demanded the full UIM limits. Exhibit F.

On December 21, 2020, in accordance with Texas law and the terms of the Policy's UIM provision regarding the conditions precedent to coverage (set forth above), AmGUARD responded noting that Plaintiffs had not provided any evidence that they had made a claim on Juarez and HP's insurer, Hudson, and that Hudson tendered the policy limits to Plaintiffs, or that the Hudson policy was exhausted. Exhibit G. The letter went on to state: "If you have evidence of the same, please provide it to us." Exhibit G.

No further information was received until May 1, 2023, when Plaintiffs notified counsel for AmGUARD that they had settled the Underlying Lawsuit against Juarez and HP on April 21, 2023, with Juarez and HP's insurer paying policy limits. Exhibit H. Plaintiffs' counsel also provided the settlement agreement. Exhibit I.

That same day, counsel for Plaintiffs spoke with counsel for AmGUARD and informed him that another defendant in the Underlying Lawsuit, RCL, was dismissed from the Underlying Lawsuit by a motion for summary judgment. The docket sheet in the Underlying Lawsuit indicates that the motion was granted on April 19, 2023, and that the fourth defendant LC Trans, LLC, had also filed a motion for summary judgment which was granted. Exhibit K.

On May 5, AmGUARD tendered its UIM Policy limits of $100,000, and requested payment instructions as well as a W-9 for Plaintiffs' counsel. Exhibit J. To date, this information has not been provided by Plaintiffs. As soon as the information is received, payment will be made. Nothing more is due under the Policy.

## V.   NO VIOLATION OF CHAPTER 542 OF THE TEXAS INSURANCE CODE

Chapter 542 of the Texas Insurance Code deals with prompt investigation and payment of claims. Plaintiffs specifically allege that AmGUARD "failed to: 1. Request additional information; or 2. Pay Plaintiffs' legitimate claim." Doc. 1, Exhibit B, ¶VIII. As is discussed below, the claim fails as a matter of law.[10]

Texas courts have held that "[n]either requesting UIM benefits nor filing suit against the insurer triggers a contractual duty to pay." *Brainard*, 216 S.W.3d at 818; *Borg v. Metro. Lloyd's*

---

[10]   A declaratory judgment of liability is a prerequisite to related or consequential causes of action and such other claims are not ripe. *See Murry v. Allstate Ins. Co.*, No. SA-22-CV-0552-JKP-RBF, 2022 U.S. Dist. LEXIS 225707 *3; 2022 WL 17725713 (W.D. Tex. Dec. 15. 2022);  *Blazejewski v. Allstate Fire & Cas. Ins. Co*., No. SA-21-CV-00700-JKP, 2021 U.S. Dist. LEXIS 175149, 2021 WL 4204148, at *1-3 (W.D. Tex. Sept. 15, 2021); *Vasquez v. Allstate Fire & Cas. Ins. Co*., No. SA-20-CV-01300-JKP, 2021 U.S. Dist. LEXIS 2635, 2021 WL 67214, at *1-3 (W.D. Tex. Jan. 6, 2021); *Ibarra v. Allstate Fire & Cas. Ins. Co*., No. SA:20-CV-00280-JKP, 2020 U.S. Dist. LEXIS 105233, 2020 WL 3259806, at *1-3 (W.D. Tex. June 16, 2020).

*of Texas*, W:12-CV-256, 2013 U.S. Dist. LEXIS 192614, 2013 WL 12091651, at *2 (W.D. Tex. Feb. 21, 2013).

Because AmGUARD was under no contractual duty to pay benefits until Plaintiffs obtained a judgment establishing the liability and the underinsured status of the other motorist, AmGUARD cannot be liable for any alleged violation of the Texas Insurance Code especially in light of the fact that once AmGUARD was notified that the alleged underinsured party had settled the Underlying Lawsuit for the policy limits and the other defendants dismissed by summary judgment,[11] AmGUARD tendered the $100,000 UIM limits to Plaintiffs within four (4) days of the notice. *Irwin*, 627 S.W.3d 263; *Brainard*, 216 S.W.3d at 815.

When Plaintiffs first claimed UIM coverage on November 21, 2020, the Underlying Lawsuit was on file just short of three (3) months; therefore, no determination had been made regarding liability. Exhibit F. Additionally, AmGUARD had requested that Plaintiffs notify AmGUARD when Juarez and HP's insurer tendered its limits to Plaintiffs. Exhibit G.

The Underlying Lawsuit to determine the liability of the alleged underinsured motorist was not resolved until late April 2023 nearly two (2) years and eight (8) months after it was filed. Exhibit K.

On May 1, 2023, Plaintiffs notified AmGUARD that a settlement had been reached and Juarez and HP's insurer tendered their policy limits. Exhibit H.

---

[11]     Given the number of defendants in the Underlying Lawsuit, there was available insurance available. Juarez and HP had $1,000,000. According to the USDOT, RCL Express had $750,000 in coverage for the year of the accident. Exhibit L. For the current year, LC Trans, LLC had insurance listed at $1,000,000, and it is not clear what its insurance coverage was in August of 2020 when the incident occurred. Exhibit M. As a result, the question of whether the UIM Policy would be required was in question until the resolution of the motions for summary judgment against these entities in the Underlying Lawsuit.

On May 5, 2023, just four (4) days after receiving notice of the settlement in the Underlying Lawsuit, in accordance with the above provision, AmGUARD tendered the UIM policy limits of $100,000 to Plaintiffs and requested payment instructions and a W-9 from Plaintiffs' counsel. Exhibit J. AmGUARD did not violate any provision of Chapter 542 of the Texas Insurance Code.

## VI.  CONCLUSION AND PRAYER

AmGUARD Insurance Company respectfully prays that its motion for summary judgment be granted because: (1) there was no obligation to pay the insured until liability was established in the Underlying Lawsuit; therefore, AmGUARD did not breach the contract of insurance since the conditions precedent to coverage had not been met when Plaintiffs originally tendered the claim on November 21, 2020, (2) when AmGUARD received notice on May 1, 2023, that a settlement had been reached between Plaintiffs, Juarez, HP and their insurer, Hudson, and the other defendants in the Underlying Lawsuit has been dismissed by summary judgment, on May 5, 2023, AmGUARD tendered its full UIM limits of $100,000, and (3) Plaintiffs' claim under Chapter 542 of the Texas Insurance Code, which deals with prompt payment of claims, also fails since AmGUARD tendered the $100,000 UIM policy limits four (4) days after it received notice that a settlement had been reached in the Underlying Lawsuit and the other defendants had been dismissed.

Dated: June 29, 2023.

Respectfully submitted,

*/s/ C. Scott Kinzel*
C. Scott Kinzel
Lead Counsel
Texas State Bar No. 00785499
Email: kinzel@pkmtexas.com

Chester J. Makowski
Texas State Bar No. 12852950
Email: makowski@pkmtexas.com

PLAVNICKY KINZEL MAKOWSKI LLP
5300 Memorial Drive, Suite 675
Houston, Texas 77007
Telephone: (713) 658-1111
Facsimile: (713) 658-8253

**ATTORNEYS FOR DEFENDANT
AmGUARD INSURANCE CO.**

## CERTIFICATE OF SERVICE

I certify that on the 29th day of June 2023 the forgoing document was served upon counsel of record by email and ECF as follows:

Mr. Andrew Toscano
GENE TOSCANO, INC.
846 Culebra Road, Suite 104
San Antonio, Texas 78201-6244
***VIA EMAIL: atoscano@genetoscano.com***
***VIA EMAIL : service@genetoscano.com***

***Attorney for Plaintiffs***

*/s/ C. Scott Kinzel*
OF PLAVNICKY KINZEL MAKOWSKI LLP