IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SARA COTHER, KENNETH COTHER AND JACKIE COTHER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF TRISTEN COTHER AND THE WRECKERMAN, LLC,<br><br>*Plaintiffs*<br><br>vs.<br><br>AmGUARD INSURANCE COMPANY AND NORTH AMERICAN RISK SERVICES, INC.,<br><br>*Defendants* | § § § § § § § § § § § § § § § § § §<br><br>CIVIL ACTION NO. 1:22-cv-765-RP |

**AmGUARD'S REPLY TO PLAINTIFFS' RESPONSE
TO THE MOTION FOR SUMMARY JUDGMENT**

AmGUARD files this reply to Plaintiffs' response to AmGUARD's motion for summary judgment to address certain matters in the response:

**I.  THE TEXAS SUPREME COURT IS CLEAR: A UIM INSURER IS UNDER
NO CONTRACTUAL DUTY TO PAY BENEFITS UNTIL THE INSURED OBTAINS
A JUDGMENT ESTABLISHING THE LIABILITY AND THE UNDERINSURED
STATUS OF THE OTHER MOTORIST**

As the Texas Supreme Court has stated, a "UIM contract is unique because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party." *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 875 (Tex. 2021).

The policy provides that AmGUARD "will pay damages which an "insured" is ***legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily***

*injury'* sustained by an 'insured' or 'property damage' caused by an 'accident'". Exhibit A, AIC 000042 (emphasis added).[1]

Likewise, §1952.106 of the Texas Insurance Code provides as follows:

> Underinsured motorist coverage must provide for payment to the insured of all amounts that the ***insured is legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury*** or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

TEX. INS. CODE §1952.106 (emphasis added).

Despite Plaintiffs' protestations to the contrary,[2] the Texas Supreme Court has clearly held that a UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and the underinsured status of the other motorist. *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 265-66 (Tex. 2021); *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006) ("We examined the insurer's obligation to pay damages which the insured is "legally entitled to recover" from the underinsured motorist and concluded that there is no contractual duty to pay benefits until the liability of the other motorist and the amount of damages suffered by the insured are determined.").[3]

As noted by a federal court, *Allstate* and *Brainard* changed the landscape in UIM cases:

---

[1]   All of the exhibits referred to are from AmGUARD's Motion for Summary Judgment (Doc. 24).

[2]   The cases Plaintiffs rely on pre-date *Brainard* and *Irwin*.

[3]   The cases Plaintiffs cited in support of the ripeness argument are inapposite. For example, Plaintiffs cited *In re DePinho*, 505 S.W.3d 621 (Tex. 2016), which is not a UIM case or a declaratory judgment case and considered subject-matter jurisdiction. Rather, it is a mandamus action which concerns Rule 202 of the Texas Rules of Civil Procedure which allows a court to authorize a deposition "to investigate a potential claim or suit." TEX. R. CIV. P. 202.

> The question after *Brainard* was what kind of "court judgment" does an insured need to obtain on the alleged tortfeasor's liability and underinsured status before becoming legally entitled to recover from an insurer for underinsured motorist benefits. The Texas Supreme Court held in *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 265-66 (Tex. 2021), that an insured may bring a suit for declaratory relief directly against an insurer to determine whether the requirements for uninsured or underinsured motorist benefits are met. The insured does not have to first establish coverage requirements though a liability action against the alleged tortfeasor. **[In the present case, that is what Plaintiffs have done; they filed the Underlying Lawsuit.]** In *Irwin*, the insured settled a claim with an underinsured motorist, unsuccessfully requested underinsured motorist benefits from his insurer, *Allstate*, and then sued for declaratory relief. *Id* at 266. **[In the case before this Court, once Plaintiffs settled with one defendant and two other defendants were dismissed by summary judgment, AmGUARD tendered its UIM limits.]** The Texas Supreme Court held that the insured's action under the Texas Uniform Declaratory Judgments Act was appropriate because, "[a]t issue here is a contract dispute about coverage, which can only be resolved by a judgment that determines the existence of these conditions." *Id*. at 270.

*Stelly v. ATM Trucking, LLC*, No. H-21-3302, 2021 U.S. Dist. LEXIS 232705 (S.D. Tex. Dec. 6, 2021) (the bracketed portions above in bold set forth what has occurred in the case before this Court).

## II. AmGUARD NEVER DENIED THE CLAIM, BUT TENDERED THE UIM LIMITS WHEN IT WAS APPROPRIATE TO DO SO

Plaintiff states that AmGUARD denied the UIM benefits. That statement is not accurate.

On November 12, 2020, Plaintiffs demanded the full UIM limits. Exhibit F. [4]

---

[4] Plaintiffs filed the Underlying Lawsuit to determine the liability of the parties to the accident on August 25, 2020, in the 111th District Court of Webb County, and as the docket sheet indicates, the Underlying Lawsuit was vigorously litigated. Exhibits E and K. Nevertheless, Plaintiffs claim on page 2 of their Response that: "The facts of the accident are not in dispute." The Underlying Lawsuit, with several defendants and has been vigorously litigated for nearly three (3) years shows that statement to be inaccurate. In fact,

AmGUARD did not deny the claim. Rather, on December 21, 2020, the insurer responded that the Plaintiffs had not provided any evidence that they had made a claim on HP and Juarez's insurer, Hudson Insurance ("Hudson"), and that Hudson had paid the $1,000,000 to Plaintiffs or otherwise exhausted the policy by the payment of other claims. The letter also requested that if this has been done to please provide AmGUARD with the information. AmGUARD also invited a dialogue with counsel for Plaintiffs. Exhibit G.

No response was received until May 1, 2023, when Plaintiffs' counsel informed counsel for AmGUARD that on April 21, 2023, Juarez, HP Carriers, Inc. and their insurer, Hudson, settled for the policy limits in the Underlying Lawsuit. Exhibits H & I (settlement agreement). At that point, AmGUARD tendered its UIM limits and requested payment instructions, but never received them. Exhibit G.

### III. AmGUARD DID NOT BREACH THE CONTRACT OR THE INSURANCE CODE

#### A.   NO BREACH OF CONTRACT

Since the Texas Supreme Court has held that there is no obligation to pay the insured until liability was established in the Underlying Lawsuit or by way of settlement of the Underlying Lawsuit, AmGUARD did not breach the contract of insurance since the conditions precedent to coverage had not been met when Plaintiffs originally tendered their claim on November 21, 2020. This is true especially in light of the fact that given the number of defendants in the Underlying Lawsuit, there was a substantial amount of insurance available.[5] Juarez and HP had $1,000,000.

---

that case is still proceeding with one defendant remaining. Plaintiffs filed this declaratory judgment action shortly after the Underlying Lawsuit was filed.

[5]   Given the amount of potential insurance coverage, the on page 2 of Plaintiffs' Response that "[a]s the history of this case demonstrates, AmGUARD has never disputed that the amount of available third party insurance was insufficient compensation to address the Plaintiffs' horrific and permanent loss[,]" is incorrect.

According to the USDOT, RCL Express had $750,000 in coverage for the year of the accident. Exhibit L. For the current year, LC Trans, LLC had insurance listed at $1,000,000, and it is not clear what its insurance coverage was in August of 2020 when the incident occurred. Exhibit M. As a result, the question of whether the UIM coverage would be required was in question until the resolution of the motions for summary judgment against these entities in the Underlying Lawsuit, and the settlement with HP and Juarez' insurer, Hudson, for the full policy limits.

B.   **NO VIOLATION OF THE TEXAS INSURANCE CODE**

Furthermore, Plaintiffs' claims under Chapter 542 of the Texas Insurance Code, which deal with prompt payment of claims, also fail since AmGUARD tendered the $100,000 UIM policy limits on May 5, 2023, four (4) days after it received notice from Plaintiffs that a settlement had been reached in the Underlying Lawsuit, the other defendants had been dismissed by way of summary judgment, and the insurance proceeds from the Underlying Lawsuit were insufficient to cover the loss. AmGUARD is ready to pay, but has not received the payment instructions from Plaintiffs' counsel.

C.   **THE CASES CITED BY PLAINTIFFS ARE DISTINGUISHABLE**

The cases cited by Plaintiffs in the Response are distinguishable, namely once the insured settled with the at-fault party, the insurer did not tender its UIM limits, unlike AmGUARD in this case which tendered its UIM limits. These are discussed below.

For example, in *Burgess v. Allstate Fire & Cas. Ins. Co.*, 641 S.W.3d 474 (Tex. App. – Austin 2021, no pet.), Burgess was injured when her automobile was struck by another driver. Burgess later filed a coverage suit against Allstate, seeking a declaration as to her legal entitlement to her UIM policy benefits. While that suit was pending, Burgess settled her claim with the other driver for his $100,000 policy limit and then demanded that Allstate pay the UIM policy limit of

$50,000. Allstate refused Burgess' demand. In the present case, once Plaintiffs settled the Underlying Lawsuit, unlike Allstate which did not tender its limits, AmGUARD immediately tendered its UIM limits of $100,000.

Similarly, in *Piazzo v. Allstate Indem. Co*., 601 F. Supp. 3d 189 (S.D. Tex. 2021), Piazzo was stopped at a traffic light, when an underinsured motorist, Brett Brittain ("Brittain"), failed to control his vehicle and collided with Piazzo's automobile. Piazzo sustained substantial personal injuries. Brittain carried a liability policy providing for coverage of $50,000 per person. With Allstate's written consent, Piazzo settled with Brittain's automobile insurance carrier for $49,000. Piazzo made an offer to settle her UIM claim with Allstate for the $100,000 UIM policy limits provided by the Allstate policy. Allstate refused her offer. However, in the present case, as soon as Plaintiffs notified AmGUARD of the settlement in the Underlying Lawsuit, unlike Allstate, AmGUARD tendered its UIM policy limits.[6]

---

[6] Plaintiffs cite, but do not discuss, *James v. Allstate Fire & Cas. Ins. Co*., 475 F. Supp. 3d 578 (N.D. Tex. 2020). The issue before the Court was a motion to remand where one of the defendants was a non-diverse party. The court examined whether a cause of action could potentially sound against the non-diverse party and determined that it did and remanded the case. Similarly, Plaintiffs cite, but do not discuss, *In re State Farm Mut. Auto. Ins. Co.*, 614 S.W.3d 316 Tex. App. – Fort Worth 2020, orig. proceeding), which was a discovery dispute that was reviewed by a petition for writ of mandamus. Given the procedural posture, the case does not apply.

## IV. CONCLUSION

AmGUARD Insurance Company respectfully prays that its motion for summary judgment be granted because: (1) there was no obligation to pay the insured until liability was established in the Underlying Lawsuit; therefore, AmGUARD did not breach the contract of insurance since the conditions precedent to coverage had not been met when Plaintiffs originally tendered the claim on November 21, 2020, (2) when AmGUARD received notice on May 1, 2023, that a settlement had been reached between Plaintiffs, Juarez, HP and their insurer, Hudson, and the other defendants in the Underlying Lawsuit has been dismissed by summary judgment, on May 5, 2023, AmGUARD tendered its full UIM limits of $100,000, and (3) Plaintiffs' claim under Chapter 542 of the Texas Insurance Code, which deals with prompt payment of claims, also fails since AmGUARD tendered the $100,000 UIM policy limits four (4) days after it received notice that a settlement had been reached in the Underlying Lawsuit and the other defendants had been dismissed.[7]

Dated: August 8, 2023.

Respectfully submitted,

*/s/ C. Scott Kinzel*
C. Scott Kinzel
Lead Counsel
Texas State Bar No. 00785499
Email: kinzel@pkmtexas.com

Chester J. Makowski
Texas State Bar No. 12852950
Email: makowski@pkmtexas.com

---

[7] AmGUARD will make payment as soon as it receives payment instructions from Plaintiffs.

PLAVNICKY KINZEL MAKOWSKI LLP
5300 Memorial Drive, Suite 675
Houston, Texas 77007
Telephone: (713) 658-1111
Facsimile: (713) 658-8253

**ATTORNEYS FOR DEFENDANT
AmGUARD INSURANCE CO.**

## CERTIFICATE OF SERVICE

I certify that on the 8th day of August 2023 the foregoing document was served upon counsel of record by email and ECF as follows:

Mr. Andrew Toscano
GENE TOSCANO, INC.
846 Culebra Road, Suite 104
San Antonio, Texas 78201-6244
*VIA EMAIL: atoscano@genetoscano.com*
*VIA EMAIL* : *service@genetoscano.com*

*Attorney for Plaintiffs*

*/s/ C. Scott Kinzel*
OF PLAVNICKY KINZEL MAKOWSKI LLP