IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SARA COTHER, KENNETH COTHER, and JACKIE COTHER, *individually and on behalf of the Estate of Tristen Cother*, and WRECKERMAN, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AMGUARD INSURANCE COMPANY,<br><br>Defendant. | § § § § § § § § § § § § | 1:22-CV-765-RP |

## <u>ORDER</u>

Before the Court is a motion for summary judgment filed by Defendant AmGUARD Insurance Company ("Defendant"). (Dkt. 24). Plaintiffs Sara Cother, Kenneth Cother and Jackie Cother, individually and on behalf of the Estate of Tristen Cother, and Wreckerman, LLC (collectively, "Plaintiffs") filed a response, (Dkt. 27), and Defendant filed a reply, (Dkt. 29). Also before the Court are Plaintiffs' Motion to Abate, (Dkt. 28), and Defendant's response in opposition, (Dkt. 30). Having considered the parties' briefing, the factual record, and the relevant law, the Court will grant in part Defendant's motion for summary judgment, deny Plaintiff's motion to abate or sever, and dismiss the declaratory judgment claim as moot.

### I. BACKGROUND

This is an underinsured motorist insurance dispute. On August 20, 2020, Tristen Cother was on Interstate 35 near mile marker 217 in Kyle, Texas, assisting a disabled vehicle on behalf of his company, The Wreckerman, LLC. (Resp., Dkt. 27, at 1–2). Early in the morning, Jose Luis Juarez ("Juarez"), a driver with HP Carriers, Inc. ("HP"), struck Tristen Cother, resulting in his immediate death. (*Id.*). At the time of the accident, The Wreckerman was covered by insurance Policy No. K2GP110136 (the "Policy") issued by Defendant, (Policy, Dkt. 24-1), and Defendant agrees that

Tristen Cother was insured under the Policy, (Mot. Dkt. 24, at 3). The Policy provided underinsured/uninsured motorist ("UIM") coverage that was limited to $100,000. (*Id.*; *see also* Joint Rule 26 Report, Dkt. 8, at 9–10 (Defendant stipulating to the underinsured coverage limitation); Pls.' Answers to Reqs. Admiss., Dkts. 24-2, 24-3, 24-4 (Plaintiffs stipulating to the limitation)). HP also maintained an insurance policy at the time of the accident, underwritten by Hudson Insurance Group ("Hudson"), which had a limit of $1,000,000. (Pls.' Letter, Ex. A, Dkt. 24-6).

On August 25, 2020, Plaintiffs filed a lawsuit in Webb County, Texas, alleging that Juarez, HP, and RCL Express, LLC ("RCL Express") were responsible for the death of Tristen Cother because of the accident on August 20, 2020. *See Sara Cother et al. v. Jose Luis Juarez et al.*, No. 2020CVA001489D2 (111th Dist. Ct., Webb County, Tex. Aug. 25, 2020) ("the Underlying Lawsuit") (Dkt. 24-5). On November 12, 2020, Plaintiffs emailed Defendant, demanding "all underinsured motorist benefits" because the Hudson policy would be "clearly insufficient to cover our clients' permanent and tragic losses." (Pls.' Letter, Dkt. 24-6, at 2–3, 8). On December 21, 2020, Defendant responded to Plaintiff's email, acknowledging receipt of the demand. (Def.'s Letter, Dkt. 24-7). Defendant stated that Plaintiffs had not provided evidence that they had made a claim on HP and Juarez's insurer, Hudson, or that Hudson had paid out and exhausted the limits of its $1,000,000 policy to Plaintiffs. (*Id.* at 2). Defendant instructed Plaintiffs to provide evidence of these actions if they had occurred (*Id.*). Defendant also informed Plaintiffs that under Texas law it had no contractual duty to pay UIM benefits "until the insured obtains a judgment establishing the liability and the underinsured status of the other motorist." (*Id.* (citing *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 815 (Tex. 2006))). Defendant did not receive a response.

On June 17, 2022, Plaintiffs filed this case against Defendant and another now-terminated co-defendant in Hays County, Texas, (Pls.' Original Pet., Dkt. 1-3), and Defendant removed the case to this Court on July 29, 2022, (Dkt. 1). Plaintiffs pleaded the following claims: (1) Plaintiffs alleged

that Defendant breached their contract by failing to pay out the UIM benefits to which Plaintiffs are beneficiaries; (2) Plaintiffs alleged that Defendants violated Texas Insurance Code Article 542 by failing to promptly investigate and pay Plaintiffs' claims; and (3) Plaintiffs brought a declaratory judgment action asking the Court to determine the rights and liabilities of the parties. (Original Pet., Dkt. 1-3, at 3–4). In its answer, Defendant denied Plaintiffs' claims that Defendant breached the contract and that it violated the Texas Insurance Code. (Answer, Dkt. 2, at 2). Defendant also asserted that Plaintiffs failed to meet the conditions precedent of the UIM provision of the policy because they had not yet obtained a judgment establishing the liability and the underinsured status of the other motorist; thus, Plaintiffs were not entitled to a declaratory judgment in their favor. (*Id.* at 2–4)

On May 1, 2023, Plaintiffs informed Defendant that on April 21, 2023, Juarez, HP, and their insurer Hudson had settled in the Underlying Lawsuit for the policy limits. (Pls.' Letter, Dkt. 24-8; Settlement Agreement, Dkt. 24-9). Plaintiffs' counsel also communicated to Defendant that RCL Express had been granted summary judgment in the Underlying Lawsuit (Mot., Dkt. 24, at 4). On May 5, 2023, Defendant responded to Plaintiffs and stated that "[i]n light of the fact that HP Carrier Inc.'s insurer has settled for its policy limits and liability has been determined as to RCL Express, LLC . . ., AmGUARD will pay the $100,000 in UIM benefits." (Def. Letter, Dkt. 24-10). In that letter, Defendant requested that Plaintiffs' counsel provide Defendant with payment instructions and the W-9 for Plaintiffs' counsel's firm. (*Id.*). Defendant, however, never received this information from Plaintiffs' counsel. (Mot., Dkt. 24, at 5).

On June 29, 2023, Defendant then filed the present motion for summary judgment on all three of Plaintiffs' claims. (Dkt. 24), and Plaintiffs filed a response, (Dkt. 27). Shortly thereafter, Plaintiffs also filed a motion to abate this case until the Underlying Lawsuit has been adjudicated, or in the alternative, to sever and abate the extra-contractual claims of this case until the "car wreck"

portion of the case is adjudicated. (Mot., Dkt. 28, at 3–4). Plaintiffs argue that such a bifurcated approach is necessary because Texas law recognizes that insurance contract actions are distinct from extra-contractual claims; therefore, the first party claims are not yet ripe until the "car wreck" issues are determined. (*Id.* at 3). Defendant opposes, arguing that there is no reason to abate this case given that the only issue relevant to this federal suit was resolved by the settlement between Plaintiffs, Juarez, HP, and Hudson. (Resp., Dkt. 30). Further, there is no reason to sever the claims because all claims can be disposed of by summary judgment. (*Id.*).

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d

Case 1:22-cv-00765-RP   Document 39   Filed 11/06/23   Page 5 of 16


170, 175 (5th Cir. 2000). Courts must view the summary judgment evidence in the light most favorable to the nonmovant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

### III. DISCUSSION

Defendant moves for summary judgment on all of Plaintiffs' three claims against it: the declaratory judgment claim, the breach of contract claim, and the Texas Insurance Code claims. Plaintiff opposes summary judgment and in turn has moved for this Court to abate this case until the Underlying Lawsuit has been adjudicated, or in the alternative, to sever and abate the extra-contractual claims of this case until the declaratory judgment portion of the case is adjudicated. The Court will grant summary judgment on the breach of contract and Texas Insurance Code claims. As to the declaratory judgment claim, the Court finds that it is moot and should be dismissed. Last, because the Court finds that this case can be resolved at the summary judgment stage, the Court will deny Plaintiffs' motion to abate or sever. The Court will address each claim of the summary judgment motion in turn before turning to the motion to abate or sever.

### A. Breach of Contract

The Court construes Plaintiffs' complaint as alleging that Defendant breached the contract by not providing payment of the UIM benefits after Plaintiffs demanded the full policy limits on November 12, 2020. Denying that it breached the contract, Defendant emphasizes that its obligations under the Policy were only triggered upon Plaintiffs' establishment of the liability and underinsured status of the other motorist. Defendant argues that there is no fact issue as to whether it breached the contract because it was not yet under any obligation to perform. (Mot., Dkt. 24, at 11). The Court agrees with Defendant.

Texas law requires that automobile insurance providers provide UIM coverage which "protects insureds who are *legally entitled* to recover from owners or operators of uninsured or underinsured motor vehicles." Tex. Ins. Code § 1952.101(a) (emphasis added). In *Brainard v. Trinity*

*Universal Insurance Company*, the Texas Supreme Court held that to be legally entitled to recover benefits under a UIM insurance policy, an insured must establish the liability of an uninsured or underinsured motorist and the extent of the damages. 216 S.W.3d at 818. The court made clear that the insurer has "no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist." *Id.* The Texas Supreme Court recently reaffirmed this holding in *Allstate Insurance Company v. Irwin*, 627 S.W.3d 263, 265 (Tex. 2021). To determine the liability of an uninsured motorist, the insured may obtain a judgment directly against the tortfeasor or the insured can file a declaratory judgment action against the insurer. *See id.* at 265–66; *see also Butts v. State Automobile Mutual Ins. Co.*, No. 1:22-CV-1238-RP, 2023 WL 3765602, at *3 (W.D. Tex. May 17, 2023), *report and recommendation adopted by* 2023 WL 3765544 (W.D. Tex. June 1, 2023).

In its response to Plaintiffs' demand on November 12, 2020, Defendant informed Plaintiffs' counsel that Defendant required "evidence that [Plaintiffs had] made a claim on HP and Juarez's insurer, Hudson, and that Hudson has paid the $1,000,000 to your clients or otherwise exhausted the policy." (Def.'s Letter, Dkt. 24-7, at 2). Defendant requested that Plaintiffs submit such evidence to Defendant once acquired. (*Id.*). Defendant also cited *Brainard* and informed Plaintiffs that under Texas law it had no contractual duty to pay UIM benefits until the insured obtains a judgment establishing the liability and the underinsured status of the other motorist, which had not yet occurred at that time. (*Id.*). Plaintiffs have admitted that they have not obtained a judgment establishing Juarez and HP's liability and underinsured status. (Pls.' Answers to Reqs. Admiss., Dkts. 24-2, at 3–4; 24-3, at 3–4; 24-4, at 3–4). The first time Plaintiffs provided evidence of Juarez and HP's liability and their underinsured status was when they notified Defendant of their settlement on May 1, 2023. (Pls.' Letter, Dkt. 24-8; Settlement Agreement, Dkt. 24-9).

Plaintiffs argue that "*Brainard* does not require obtaining a judgment against an underinsured motorist before pursuing a claim against its insurer for underinsured motorist benefits." (Resp., Dkt. 27, at 6). Plaintiffs point to *Irwin* in asserting that its current suit against Defendant is appropriate because it is, in part, a declaratory judgment action directly against the insurer. (*Id.* (citing *Irwin*, 627 S.W.3d at 265)). Plaintiffs are correct in stating that *Brainard* and *Irwin* allow them to determine their UIM coverage by bringing a declaratory judgment claim against Defendant. However, Plaintiffs' arguments do not address why their breach of contract claim should be allowed to proceed. Nor could they. *Brainard* and *Irwin* are clear that an insured must obtain a judgment establishing the liability and underinsured status of the other motorist before the insurer is contractually liable to pay out the UIM coverage. Accordingly, Defendant was not contractually liable for the UIM limits until liability and underinsured status was determined in the Underlying Lawsuit. Because no such judgment existed, and thus the conditions precedent to the contract were not met when Plaintiffs made their demand on November 12, 2020, Defendant did not breach its contract at that time nor any time thereafter. After Defendant learned of Plaintiffs' settlement, it promptly agreed to pay the UIM benefits and requested payment information, which was never provided. The Court finds that Defendant is entitled to summary judgment on the breach of contract claim.

## B.  Texas Insurance Code Claims

Plaintiffs next allege that Defendant violated Chapter 542 of the Texas Insurance Code because after Plaintiffs presented their claim, Defendant failed to "request additional information" or "pay Plaintiffs' legitimate claim." (Original Pet., Dkt. 1-3, at 4). Plaintiffs, however, do not specify in their Original Petition or their response to the summary judgment motion which specific requirements of Chapter 542—of which there are many—Defendant violated. In their response to the motion for summary judgment, Plaintiffs cite a number of cases to argue that an insurer can be liable for "common-law bad faith and for unfair settlement practices under the Insurance Code

when it delays payment on a claim for UIM benefits until the insured has obtained legal determinations as to the liability and underinsured status of the third-party motorists." (Resp., Dkt. 27, at 7–8). Plaintiffs also point to case law stating that when an insurer's liability is "reasonably clear," an insurer may act in bad faith in denying or delaying the UIM claim and insisting that the insured obtain a legal determination as to coverage as a prerequisite to having their claim paid out. (*Id.* at 9). Plaintiffs briefly argue that this case law is applicable because from the beginning of this dispute, Defendant was "clearly apprised" that Juarez, and not Tristen Cother, was at fault for the accident and should have known that the "maximum available third-party insurance would be insufficient due to the horrific and permanent damages Plaintiffs suffered." (*Id.* at 7).

Defendant counters that it cannot be liable for an alleged violation of the Texas Insurance Code because it was under no contractual duty to pay the policy limits to Plaintiffs until Plaintiffs obtained a judgment establishing the liability and the underinsured status of Juarez. (Mot., Dkt. 24, at 13). And when it was presented with evidence that Plaintiffs had settled the case in spring 2023, it promptly tendered the limits of the policy within four days of the notice. (*Id.*). Defendant also points out that as of the November 2020 demand, it was unclear whether UIM coverage would be necessary because the Underlying Lawsuit was being vigorously litigated. (Reply, Dkt. 29, at 4–5).

Chapter 542 of the Texas Insurance Code governs the prompt payment of insurance claims and an insurer's responsibilities to promptly respond to and investigate claims. *See* Tex. Ins. Code § 542.054 ("This subchapter shall be liberally construed to promote the prompt payment of insurance claims."); *see generally Barbara Technologies Corp. v. State Farm Llyods*, 589 S.W.3d 806, 812 (Tex. 2019) (discussing various specific requirements in Chapter 542). Plaintiffs are correct in so far as they point out that Texas courts have recognized instances where an insurer may be liable for common-law bad faith and for unfair settlement practices under the Insurance Code when it delays payment on a claim for UIM benefits until the insured has obtained legal determinations as to the liability and

8

underinsured status of the third-party motorists. *See, e.g.*, *Burgess v. Allstate Fire & Cas. Ins. Co.*, 641 S.W.3d 474, 483 (Tex. App.—Austin 2021, no pet.); *Accardo v. American First Lloyds Ins. Co.*, No. H-11- 0008, 2012 WL 1576022, at *5 (S.D. Tex. May 3, 2012). However, Texas courts have also been quick to recognize that not "every denial of a claim prior to a determination of UIM coverage is tortious and actionable." *Burgess*, 641 S.W.3d at 483 (citing *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 197 (Tex. 1998)).

The Court understands Plaintiffs to be alleging that Defendant failed to pay their claim when its liability under the insurance policy was reasonably clear. To prevail on such a claim, "the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). In other words, the insured bears the burden to prove that "there were no facts before the insurer which, if believed, would justify denial of the claim." *Higginbotham*, 103 F.3d at 459 (citing *State Farm Lloyds Inc. v. Polasek*, 847 S.W.3d 279, 284 (Tex. App.—San Antonio 1992, writ denied)). "[T]he issue of bad faith does not focus on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim." *Lyons v. Miller Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993). "Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Burgess*, 641 S.W.3d at 483–84 (internal quotation marks omitted).

Thus, the issue is whether Defendant's liability was "reasonably clear" at the time of Plaintiffs' demand letter such that Defendant's delay in tendering the UIM limits constitutes bad faith and a violation of the Texas Insurance Code. Defendant argues that it was justified in not tendering the claim at that time because no judicial determination as to liability nor underinsured status had been made as of November 2020 as the Underlying Lawsuit had only been filed three

months prior. (Mot., Dkt. 24, at 13). Specifically, Defendant argues that "the question of whether the UIM policy would be required was in question" throughout the Underlying Lawsuit because there were several defendants involved and the amount of insurance that those defendants carried was substantial. (*Id.* at 13 n.11). For example, Defendant produces evidence that, although HP and Juarez had a policy limit of $1,000,000 through their insurer Hudson, RCL Express had $750,000 in coverage for the year of the accident. (Ex. L, Dkt. 24-12). And LC Trans, LLC ("LC Trans"), also named as a defendant in the Underlying Lawsuit, currently holds a policy of $1,000,000, though the insurance coverage in August 2020 is unclear. (Ex. M, Dkt. 24-13). Therefore, according to Defendant, the underinsured status of HP and Juarez was not fully resolved until summary judgment was granted against RCL Express and LC Trans. (Mot. Dkt. 24, at 13 n.11).

Plaintiffs do not produce evidence to contest these arguments. Instead, they argue in a conclusory fashion that Defendant was "clearly apprised" of the fault of the underinsured motorist and the fact that the "maximum available third-party insurance would be insufficient due to the horrific and permanent damages Plaintiffs suffered." (Resp., Dkt. 27, at 7). They also mention a case that found that whether liability is "reasonably clear' is generally a question of fact. (*Id.* (citing *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997))). However, a court may still decide a bad faith claim as a matter of law if there is no conflict in evidence. *Giles*, 950 S.W.2d at 56 ("A court may be entitled to decide an issue as a matter of law when there is no conflict in the evidence, but when there is evidence on either side, the issue is a fact question."); *see also Alvarez v. State Farm Lloyds*, No. SA-18-CV-01191-XR, 2020 WL 1033657, at *4 n.2 (W.D. Tex. Mar. 2, 2020) (collecting cases). Texas courts regularly determine on summary judgment whether a fact dispute exists as to the insurer's denial of coverage. See *Alvarez*, 2020 WL 1033657, at *4 n.2. Thus, summary judgment is appropriate as Plaintiffs have failed to show that there is a genuine factual dispute as to whether Defendant's unreasonably delayed payment of UIM benefits.

It is clear from the record that Defendant was reasonable in not immediately paying out the UIM limits. At the time of Plaintiffs' demand, Defendant had no contractual obligation to pay out the limits because there was no judgment in the Underlying Lawsuit as required by Texas law. Defendant also did not know if it would ever be obligated to pay because a bona fide dispute existed as to whether HP and Juarez would be underinsured such that Defendant's UIM policy would be needed at all. Defendant communicated its position to Plaintiffs in response to their demand, and contrary to Plaintiffs' assertions, Defendant requested additional information concerning whether Plaintiffs had indeed made a claim on Hudson or had otherwise exhausted that policy. (Def.'s Letter, Dkt. 24-7). Therefore, the Court finds that Defendant did not act in bad faith in not paying out the UIM policy limits after Plaintiffs made their demand in November 2020.

Also of note, when Plaintiffs did notify Defendants of the settlement indicating the liability and underinsured status of HP and Juarez, Defendant acted in accordance with the Texas Insurance Code. On May 1, 2023, Plaintiffs informed Defendant of the settlement for the policy limits and of RCL Express's dismissal on summary judgment in the Underlying Lawsuit. (Pls.' Letter, Dkt. 24-8; Settlement Agreement, Dkt. 24-9; Mot., Dkt. 24, at 4). Defendants also knew by that time that LC Trans had similarly been granted summary judgment on April 19, 2023. (Ex. K, Dkt. 24-11). Thus, it then became clear that Juarez and HP were liable for the accident and that their policy limits may not cover the full amount of damages. On May 5, 2023, Defendant responded by tendering the limits of the UIM policy to Plaintiffs and requested that Plaintiffs' counsel provide Defendant with payment information. (Def. Letter, Dkt. 24-10). Defendant indicated that it was doing so precisely because it knew that Hudson had settled for its policy limits and RCL Express had been granted summary judgment. (*Id.*). Defendant, however, asserts that it never received this information from Plaintiffs' counsel. (Mot., Dkt. 24, at 5). Plaintiffs have not rebuffed this allegation. Plaintiffs have

not been promptly paid on that policy not because of any fault of Defendant but because Plaintiffs have failed to provide payment information to Defendant.

Accordingly, the Court finds that Defendant has not violated Texas Insurance Code Chapter 542 by failing "to pay Plaintiffs' legitimate claim" or by failing to "request additional information." Defendant is entitled to summary judgment on the Texas Insurance Code claims.

### C. Declaratory Judgment

The Court next turns to Plaintiffs' declaratory judgment claim. In their Original Petition filed in state court, Plaintiffs requested a declaratory judgment to determine the rights and liabilities of the parties to this suit, including the liability of Juarez and HP and whether they were underinsured. (Original Pet., Dkt. 1-3, at 3–4). When this case began, Defendant denied liability because the conditions precedent to UIM coverage had not been met, i.e., no judgment had yet been made. (Answer, Dkt. 2, at 2). Now, Defendant states that the conditions precedent have been met and Plaintiffs have provided evidence that the policy in the Underlying Lawsuit is not sufficient to cover the damages. (Mot., Dkt. 24, at 5). Accordingly, Defendant tendered the UIM limits of $100,000 and thus argues that because it has tendered the policy limits, it has discharged its obligations under the contract. (*Id.*). Plaintiffs do not contest that Defendant has tendered the benefits due under the policy, but they assert that Defendant's arguments amount to a wrongheaded request for "this court, without the benefit of a jury, to grant a defense of accord and satisfaction." (Resp., Dkt. 27, at 4–5).

Texas law allows an insured to pursue a case for UIM benefits directly against the insurer through a declaratory judgment action under the Texas Uniform Judgments Act. *Irwin*, 627 S.W.3d 265–66. However, "[w]hen a declaratory judgment action filed in state court is removed to federal court, the federal court does not apply the Texas Declaratory Judgment Act." *Collins v. Nat'l Football League*, 566 F.Supp.3d 586, 602 (E.D. Tex. 2021) (quotation omitted). Instead, the "action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202."

*Piazzo v. Allstate Indem. Co.*, 601 F. Supp. 3d 189, 195 (S.D. Tex. 2022) (internal quotation marks omitted). The federal Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Federal courts have broad discretion to grant or refuse declaratory judgment. *Torch, Inc. v. LeBlanc,* 947 F.2d 193, 194 (5th Cir. 1991).

"When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The court must ask (1) "whether an 'actual controversy' exists between the parties" in the case; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* A case presents an "actual controversy" under the Declaratory Judgments Act if it qualifies as a "case or controversy" under Article III of the U.S. Constitution. *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006).

Although neither party raises the issue, a district court must consider subject matter jurisdiction *sua sponte* to ensure that it has jurisdiction over the claims before it. *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293 (5th Cir. 2019). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013) (internal quotation marks omitted). The Fifth Circuit has explained that whether a claim for declaratory judgment is moot depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *Granville v. Thaler*, No. CIV.A. H-07-0849, 2012 WL 3779228, at *2 (S.D. Tex. Aug. 30, 2012) (quoting *Florida Bd. of Bus. Regulation v. N.L.R.B.,* 605 F.2d 916, 918–19 (5th Cir. 1979)). "If a dispute

has been resolved or if it has evanesced because of changed circumstances, . . . it is considered moot." *Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988) (citing *Matter of S.L.E. Inc.*, 674 F.2d 359, 364 (5th Cir. 1982)).

In this case, it is unclear what purpose a declaratory judgment would serve. When this case was filed in July 2022, a live controversy existed as to whether Defendant was liable to Plaintiffs under the UIM policy. However, circumstances changed once Defendant agreed that the conditions precedent to UIM coverage had been met and tendered the $100,000 limits of the policy to Plaintiffs on May 5, 2023. (Def.'s Letter, Dkt. 24-10; Mot., Dkt. 24, at 5). Plaintiffs and Defendant are no longer in disagreement as to whether Plaintiffs are entitled to the UIM benefits. The purpose of a declaratory judgment action is to establish the liability and the underinsured status of the third-party tortfeasor, which in turn then enables a court to determine that the insurer is obligated to pay out the UIM benefits to the insured. In tendering the policy benefits to Plaintiffs, Defendant has admitted that Plaintiff is entitled to those benefits under the contract. *See Rancho Camille, S.A. v. Beachum*, 596 S.W.2d 632 (Tex. App.—Waco 1980, no pet.) ("[A] tender is ordinarily an admission of the validity of the plaintiff's claim to the extent of the sum tendered."). And because it has tendered the policy limits, Plaintiffs have received the maximum amount of funds that they are due under the contract no matter the exact amount of damages that might be determined by a declaratory judgment.

While the Court will not reach a decision on whether Defendant has completely discharged its contractual obligations by tendering the policy limits to Plaintiffs, the tender does negate the need for a declaratory judgment from the Court. Accordingly, there is nothing more for the Court to do in this case. All that remains is for Plaintiffs to provide payment information and for Defendant to make the payment as promised. *See* (Mot., Dkt. 24, at 12 ("As soon as the information is received, payment will be made.")); *see also Luccia v. Ross*, 274 S.W.3d 140, 149 (Tex. App.—Houston 2008, no

pet.) ("The term 'tender' means to notify the other party that one intends to perform one's side of the bargain immediately or at a specific time and place and to demand that the other party do likewise.") (internal quotation marks omitted). Because Defendant and Plaintiffs both agree that Plaintiffs are entitled to the $100,000 limits of the UIM policy, there no longer remains an "actual controversy" as to the declaratory judgment claim. Accordingly, the Court dismisses Plaintiffs' declaratory judgment claim as moot.

### D.  Motion to Abate or Sever

In closing, the Court will briefly address Plaintiffs' motion to abate this case until the Underlying Lawsuit has been adjudicated, or in the alternative, to sever and abate the extra-contractual claims of this case until the declaratory judgment portion of the case is adjudicated. (Mot., Dkt. 28). Plaintiffs argue that Texas law generally requires a bifurcated approach in UIM liability cases, where the court first determines the parties' liabilities under the contract through a declaratory judgment action and then determines the breach of contract and Texas Insurance Code claims if the insurer is found liable under the contract. (*Id.* at 3). Defendant responds that such bifurcation is unnecessary in this instance because the entire case can be disposed of on summary judgment motion. (Resp., Dkt. 30). The Court agrees with Defendant.

The Court recognizes that Texas law prefers a bifurcated approach when there are both third-party and first-party claims in cases involving UIM liability. *See In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 875 (Tex. 2021). However, such an approach is unnecessary in this case. First, there is no need to abate this case until the Underlying Lawsuit concludes because Plaintiffs have settled their claims with HP and Juarez and their insurer Hudson for Hudson's policy limits. Further, additional defendants RCL Express and LL Trans have been granted summary judgment. Accordingly, the Court agrees with Defendant that whatever remains in the Underlying Lawsuit does

not impact this case, and so it is not necessary to wait until its completion in order for this case to resolve.

As to Plaintiffs' request to sever the extra-contractual claims and abate adjudication of those claims until the declaratory judgment claim is adjudicated, such an approach is also unnecessary given that the declaratory judgment claim is moot. There is no longer a declaratory judgment claim from which to sever the extra-contractual claims. The Court is satisfied that even without a ruling on the declaratory judgment action, it has been presented with enough evidence to grant summary judgment on the breach of contract and Texas Insurance Code claims. Therefore, the Court finds that abating this case or severing claims of this case is not necessary and summary judgment is appropriate. The Court denies Plaintiffs' motion to abate or sever.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment, (Dkt. 24), is **GRANTED IN PART**. Defendant's motion is granted as to the breach of contract and Texas Insurance Code claims. Plaintiffs' declaratory judgment claim is **DISMISSED WITHOUT PREJUDICE** as **MOOT**. The Court will issue final judgment in a separate order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Abate, (Dkt. 28), is **DENIED**.

**SIGNED** on November 6, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE